**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United States of America,                      Crim. No. 12-280 (MJD/JJK)

        Plaintiff,

v.                                           **REPORT AND RECOMMENDATION**

Demetrius Demarco Spencer,

        Defendant.

---

Richard A. Newberry, Jr., Esq., Assistant United States Attorney, counsel for Plaintiff.

Douglas Olson, Esq., Assistant Federal Defender, counsel for Defendant.

---

The following motions have been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1: (1) Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 21); (2) Defendant's Motion to Suppress Eyewitness Identification (Doc. No. 22); and (3) Defendant's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 23). This Court held a hearing on these motions on December 12, 2012. Sergeant John Biederman, an officer with the City of Minneapolis Police Department and a member of the police department's task force with the Bureau of Alcohol Tobacco and Firearms, testified on behalf of the Government at that hearing. Defendant also testified on his own behalf at the hearing for the limited purpose of establishing a basis for challenging the search

of a vehicle. Based on the motions, the testimony at the hearing, the arguments of counsel, and the findings of fact and conclusions of law set forth below, this Court recommends that the motions be denied.

## FINDINGS OF FACT[1]

Defendant is charged in this case with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), namely a Smith & Wesson, Model 9VE, 9mm, semi-automatic pistol. (Doc. No. 1.) The motions

---

[1] Sergeant John Biederman was the only witness to testify for the Government at the hearing. Sergeant Biederman was not involved in the challenged search or Defendant's arrest, and only later became involved in the case when he interviewed Defendant at Hennepin County Jail. Sergeant Biederman based his testimony concerning the search at issue and Defendant's arrest on his contemporaneous conversations with the arresting officers shortly after the arrest and his review of their police reports when he was reviewing the case for possible referral for federal prosecution.

It is unclear why the officer involved in the search and who arrested Defendant was unable to testify at the hearing. However, this Court concluded that the hearsay evidence in Sergeant Biederman's testimony could be relied upon at the suppression hearing, even though it would be inadmissible at trial, because it arose from the interviews Biederman had with the arresting officer and Biederman's review of the police reports. *See United States v. Boyce*, 797 F.2d 691, 693 (8th Cir. 1986) (discussing the propriety of relying on otherwise reliable hearsay evidence at a suppression hearing because the Federal Rules of Evidence and the Sixth Amendment right of confrontation do not apply precisely as they do in a criminal trial). Here, Sergeant Biederman's testimony did not cause this Court serious concern about the truthfulness of the statements he attributed to the arresting officer, and it was proper to rely upon his sworn testimony for purposes of the suppression hearing. *See United States v. Smith*, Crim. No. 12-183 (SRN/AJB), 2012 WL 5497862, at *2 (D. Minn. Nov. 13, 2012) (concluding that testimony as to hearsay statements from one at a suppression hearing was sufficiently reliable to be relied upon by the Court). The procedure used by the Government in this matter, however, is not this Court's preferred method of conducting suppression hearings.

2

pending before this Court concern the admissibility at trial of that weapon, which is challenged on grounds that it was recovered in an unlawful search of a vehicle, and the admissibility of statements Defendant made after he was arrested. The vehicle search and Defendant's arrest took place early in the morning, shortly after bars and nightclubs had closed in downtown Minneapolis, and Defendant made the statements at issue several hours later at the Hennepin County Jail.

On August 23, 2012, around 2:30 a.m., Minneapolis Police Department dispatch requested officers to respond to a report of a fight at a parking lot near the intersection of First Avenue North and North First Street in downtown Minneapolis. Sergeant Biederman testified that another officer in the City of Minneapolis Police Department, Officer Stewart, responded to the call. When Officer Stewart and his partner arrived at the scene, it appeared that a fight was breaking up in an uncovered parking lot on the west side of North Fourth Street.

In the parking lot, Officer Stewart saw Defendant standing next to a black Pontiac G6 with the driver's side door open. Officer Stewart saw Defendant reach into his pants and pull out an "L-shaped" bundle in a white sock. He then watched as Defendant reached into the Pontiac and placed the bundle under the front driver's-side seat, but remained outside the vehicle. Officer Stewart apparently recognized the sock and its shape to be a firearm. According to Sergeant Biederman, Officer Stewart believed that the sock contained a firearm because he was aware that some people keep pistols in a sock to conceal them

3

or because they believe that the sock prevents the transfer of DNA evidence and fingerprints onto the firearm.

Because Officer Stewart believed there was a gun in the sock, there were only two officers on the scene, there had already been a fight in the area, and there were still around fifty people in or around the parking lot, to make the scene safe, Officer Stewart detained Defendant and removed the bundle from under the driver's seat of the car.[2] He discovered that the sock did, in fact, contain a firearm, the Smith & Wesson pistol at issue. At that point, Defendant stated to Officer Stewart "I didn't do anything. This isn't even my car." Officer Stewart then placed Defendant under arrest and brought Defendant to Hennepin County Jail.[3]

At the suppression hearing, Defendant testified that he was not the owner of the Pontiac. He explained, however, that he knew the vehicle's owner, a man named Miles Lewis. He met Lewis in the evening of August 22, 2012, to go to a nightclub and rode as a passenger in the Pontiac to downtown Minneapolis. Lewis parked the vehicle in the uncovered parking lot discussed above, and the two went to a nearby club. When they were leaving the club, Defendant says

---

[2]  The keys were in the ignition of the Pontiac.

[3]  Defendant objected at the hearing to all of Sergeant Biederman's testimony concerning Officer Stewart's observations on August 23, 2012, his search of the Pontiac, and his arrest of Defendant on grounds of hearsay. As discussed *supra* in note 1, this Court overruled Defendant's objection and heard Sergeant Biederman's testimony.

4

that a group of about fifteen men confronted Lewis outside the club on their way to the parking lot.  Lewis then asked Defendant to move the Pontiac across the parking lot so that they could leave the area more quickly.  Lewis gave Defendant the keys to the Pontiac, and Defendant drove the vehicle a few hundred feet across the parking lot, left the keys in the ignition, opened the driver's door, and stepped out of the vehicle.  A matter of seconds after he stepped out of the car, Defendant testified that he was arrested.  On cross-examination, Defendant admitted that after he stepped out of the driver's seat, he never intended to operate the vehicle further.

Several hours after Defendant's arrest, but still in the morning of August 23, 2012, Defendant's case was assigned to Sergeant Biederman.  Around 8:30 a.m., Sergeant Biederman arranged to interview Defendant in an interview room in the Hennepin County Jail where Defendant was being held.  Sergeant Biederman was attempting to determine whether to refer the case to the United States Attorney's Office for federal prosecution on a felon-in-possession charge.  At the outset of the interview, Sergeant Biederman read Defendant his *Miranda* rights.  Defendant stated that he understood those rights and agreed to continue the interview.  Defendant did not request an attorney, but he did say that he was feeling a bit "tipsy."  Sergeant Biederman explained, however, that he did not observe Defendant exhibiting signs of intoxication and that Defendant's responses to his questions made sense.  He also explained that Defendant

seemed aware of the possible consequences if he was ultimately convicted of unlawfully possessing a firearm.

During the interview, Sergeant Biederman asked Defendant about the gun and the Pontiac. Defendant told Sergeant Biederman that he did not know anything about the gun. Defendant also told Sergeant Biederman that he did not know who owned the Pontiac and was concerned about whether his own truck might have been impounded. Defendant admitted at the December 12, 2012 hearing that he had lied to Sergeant Biederman during the August 23 interview about not knowing the Pontiac's owner. The entire interview lasted between twenty and twenty-five minutes. Sergeant Biederman testified that he remained seated during the interview, he did not have a gun, Defendant was not restrained, he made no threats or promises to Defendant, and he did not yell during the interview.

After he concluded the interview, Sergeant Biederman tried to determine who the owner of the Pontiac was. He learned that the registered owner was Miles Lewis. He arranged to meet Lewis on August 23, 2012, at a location convenient for both of them. Lewis admitted to Sergeant Biederman that he was the owner of the Pontiac. However, Lewis denied knowing Defendant or ever giving him permission to use his vehicle. Instead, Lewis told Sergeant Biederman that the passenger in his vehicle that evening had been an individual known by the nickname "Merc." Sergeant Biederman was able to determine by

Lewis's physical description of Merc that he was not talking about Defendant, but Sergeant Biederman was unable to definitively determine Merc's true identity.

## CONCLUSIONS OF LAW

**I.  DEFENDANT'S MOTION TO SUPPRESS EYEWITNESS IDENTIFICATIONS**

At the hearing, Defendant's counsel confirmed that Defendant does not challenge any eyewitness identifications and that the issues raised by his motion to suppress certain eyewitness identifications is no longer in issue.  Based on counsel's representations at the hearing, this Court recommends that Defendant's Motion to Suppress Eyewitness Identifications (Doc. No. 22), be **DENIED**.

**II.  DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF SEARCH AND SEIZURE**

Defendant moves to suppress the gun that Officer Stewart seized during his search of the Pontiac on August 23, 2012.  The Government, however, raises a threshold issue concerning Defendant's "standing" to challenge that search.  Specifically, the Government argues that Defendant does not have a legal basis to challenge the search of the Pontiac because he was not the owner of the vehicle, and, under the circumstances, had no reasonable expectation of privacy in it.

Fourth Amendment rights are personal and may not be asserted vicariously.  *Alderman v. United States*, 394 U.S. 165, 174 (1969); *United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999).  For that reason, whether a

defendant has "standing" to challenge a search on Fourth Amendment grounds depends on whether the defendant had a reasonable expectation of privacy in the place that was searched – a matter not of procedure, but of substantive Fourth Amendment law.  *See United States v. Green*, 275 F.3d 694, 698 n.3 (8th Cir. 2002).  The defendant has the burden of proving a reasonable expectation of privacy in the area searched.  *Rakas v. Illinois*, 439 U.S. 128, 130–31 n.1 (1978).  To establish a legitimate expectation of privacy, the defendant must show a subjective expectation of privacy, and that his expectation of privacy is one that society is prepared to recognize as objectively reasonable.  *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995).  To determine whether a person has standing to challenge a search, courts consider factors such as ownership, possession or control of the area searched, historical use of the property, the ability to regulate access, the totality of the circumstances surrounding the search, any subjective anticipation of privacy, and the objective reasonableness of the expectation of privacy considering the specific facts of the case.  *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994).

    Here, even if this Court credits Defendant's testimony concerning his involvement with the vehicle on the night of his arrest to the exclusion of the other information introduced at the hearing on that issue,[4] Defendant did not

---

[4] This Court reaches its conclusion that Defendant lacked a reasonable expectation of privacy in the Pontiac assuming that Defendant testified truthfully while under oath at the hearing, for instance, even though he told Sergeant
(Footnote Continued on Following Page)

have a reasonable expectation of privacy in the Pontiac. On the night of August 22, 2012, Defendant rode in Miles Lewis's Pontiac as a passenger when Defendant and Lewis went to a downtown Minneapolis nightclub where they arrived at about 10:30 p.m. At about 2:30 a.m., after they left the club, Lewis gave Defendant the keys to the car and asked him to move the vehicle from one side of a parking lot to another, a distance of only a few hundred feet. After Defendant moved the vehicle across the parking lot, he left the keys in the ignition, exited the vehicle, and had no plans of driving the car later in the evening or driving the car home. Thus, although he states that Lewis permitted him to move the car, Defendant admitted that, at the time the vehicle was searched, he did not own the car, his brief possession and control over the vehicle had ceased, and he could not regulate access to the vehicle because he had no possession of the keys. He provided no testimony that he had any historical use of the property. And he admitted that he never intended to use the vehicle beyond moving it across the parking lot. Thus, his permitted use of the vehicle was temporary, limited, and had concluded by the time it was searched. Accordingly, this Court concludes that Defendant did not have a reasonable expectation of privacy in the Pontiac, and therefore he cannot

---

(Footnote Continued from Previous Page)
Biederman a different story about his involvement with the car during the August 23 interview at Hennepin County Jail, and even though Miles Lewis claimed not to have known Defendant or ever have given him permission to use his car.

9

challenge the search of that vehicle as a violation of his Fourth Amendment rights.

Defendant argues that he did have a legitimate expectation of privacy in the Pontiac because he had permission to borrow the vehicle from its owner, and he cited several cases at the hearing in support of this proposition.[5]  However, none of the cases Defendant relies on that found an individual with the owner's permission to use a vehicle had a legitimate expectation of privacy involved circumstances comparable to this case.  *See United States v. Smith*, 263 F.3d 571, 587 (6th Cir. 2008) (concluding that the defendant, who was stopped while operating a vehicle rented by his wife, had a legitimate expectation of privacy where he had permission to operate the vehicle, and had a business relationship with the rental company sufficient to make him the de facto renter of the car); *United States v. Valdez Hocker*, 333 F.3d 1206 (10th Cir. 2003) (reaching only the limited conclusion that the borrower of the vehicle in question had shown a reasonable belief that he had borrowed the vehicle from its lawful owner

---

[5]  Defendant also suggested that because he was a passenger in the vehicle, he had a legitimate expectation of privacy in the Pontiac.  However, being a passenger does not give an individual a legitimate expectation of privacy for the purpose of challenging the search of the car.  Instead, passenger status allows a person to challenge the legality of a traffic stop because the passenger is seized within the meaning of the Fourth Amendment.  *See United States v. Crippen*, 627 F.3d 1056, 1063 (8th Cir. 2010) (distinguishing lack of standing to challenge a search of a vehicle as a mere passenger from the passenger's standing to challenge the legality of a traffic stop).  In any event, this case did not involve a traffic stop, Defendant's stint as a passenger in the vehicle had ended hours before he was arrested, and he was standing outside the vehicle when confronted by Officer Stewart.

sufficient to obtain a remand for further consideration by the district court for further consideration of the Fourth Amendment issues); *United States v. Baker*, 221 F.3d 438, 443-43 (3d Cir. 2000) (concluding that non-owner had legitimate expectation of privacy in a car he borrowed from a friend, had been driving for four to six weeks, and where he brought the keys to the vehicle into a parole office); *United States v. Lee*, 898 F.2d 1034, 1038 (5th Cir. 1990) (concluding that non-owners of cargo truck had legitimate expectation of privacy in the vehicle they were operating with the owner's permission and where the owner entrusted the vehicle and its contents to the defendants who were operating the truck when it was stopped by police). Unlike in these cases, Defendant's permitted use of the vehicle was considerably brief and he had concluded the minor errand Lewis allegedly assigned him to carry out. In short, the cases that conclude a person has a reasonable expectation of privacy in a vehicle he has borrowed from its owner hinge on facts showing a greater degree of involvement with the vehicle in question than those present here. Defendant's relationship to the Pontiac in this case was much more casual and insufficient to support a finding that he had a reasonable expectation of privacy in the vehicle.

Consistent with the foregoing, this Court recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 21), be **DENIED**.

### III. Defendant's Motion to Suppress Statements, Admissions, and Answers

Defendant also moves to suppress the statements he made to Sergeant Biederman at the Hennepin County Jail in the morning interview of August 23, 2012. Among the grounds for suppression raised in Defendant's motion to suppress those statements were that they were taken in violation of his Fifth Amendment rights and in violation of the rule established by *Miranda v. Arizona*, 384 U.S. 436 (1966). At the hearing, however, Defendant conceded that the Government had established that the custodial interrogation at the Hennepin County Jail was properly preceded by *Miranda* warnings and that Defendant's statements were freely and voluntarily made.

Nevertheless, Defendant argued at the hearing that he still challenges the admissibility of those statements on grounds that they are fruit of the poisonous tree, that is, the statements would not have occurred but for the illegal search of the Pontiac where the gun was found. Although Defendant appears to have raised this argument in his motion (*see* Doc. No. 23 ¶ 4), he did not elucidate the argument's precise contours in that pleading. The failure to plead the grounds for this argument with more specificity in the motion itself is a product the standard practice of defendants filing "boilerplate" motions in this District. By making this observation, this Court intends no criticism of Defendant's counsel in this case. And this Court recognizes that the precise bases on which a defendant may challenge the constitutionality of the methods used by law

12

enforcement to gather evidence in a specific case may not become clear until after the hearing ends.  In this case, given a compressed schedule between the motions hearing and the firm trial date, this Court informed the parties that they should be prepared to make their legal arguments on the record at the hearing so that a decision could be promptly made.  At the hearing, with respect to the Fourth Amendment's requirement that a warrantless search of a car must be supported by probable cause, Defendant argued that the search of the Pontiac was unlawful because Officer Stewart's observations showed nothing more than his curiosity about what was inside of the white sock he saw Defendant place under the driver's seat of the Pontiac.  Thus, this Court construes Defendant's argument to be that his Fourth Amendment rights were violated by the allegedly unlawful search of the Pontiac, and that unlawful search rendered his subsequent jailhouse statements fruit of the poisonous tree.

Under the "fruit of the poisonous tree" doctrine, derivative evidence, including a confession, must be suppressed as "fruit of the poisonous tree" if it was discovered by exploiting an illegal search.  *Wong Sun v. United States,* 371 U.S. 471, 488 (1963).  However, because this Court has concluded that Defendant lacks standing to challenge the search of the Pontiac, and recommends his motion to suppress the evidence seized from it be denied, this Court also concludes that Defendant's statements are not fruit of the poisonous tree.  *See United States v. Gordon*, 65 F. Supp. 2d 365, 370 (E.D. Va. 1999) (concluding, in a case involving felon-in-possession charges, that because the

defendant lacked standing to challenge the search of a rental vehicle, his statements could not be suppressed as fruit of the poisonous tree). To be clear, Defendant has not argued that the tree was poisoned because his initial detention after Officer Stewart saw him place the sock under the driver's seat of the car was an unlawful arrest or investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968).[6] Nor has Defendant argued that the tree was poisoned because his arrest after the gun was discovered was a warrantless arrest unsupported by probable cause. Rather, the only source of illegality in the chain of events leading to his jailhouse statements that Defendant challenges here is the search of the Pontiac, and, as discussed above, he has no standing to make that challenge.

Accordingly, this Court recommends that Defendant's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 23), be **DENIED**.

---

[6] Assuming Officer Stewart would testify to the same facts Sergeant Biederman provided at the hearing, it does appear that Officer Stewart had a reasonable articulable suspicion that Defendant had been or was about to be engaged in some unlawful activity. An individual suddenly removing a white sock wrapped around a pistol-shaped object from his pants and placing it under the driver's seat of a nearby vehicle with an open door at 2:30 a.m. in a crowded parking lot outside a night club creates a reasonable articulable suspicion that criminal activity is afoot. The fact that some innocent explanation for what Officer Stewart observed could be imagined does not render the suspicion that something illegal was going on unreasonable.

14

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 21), be **DENIED**;

2. Defendant's Motion to Suppress Eyewitness Identifications (Doc. No. 22), be **DENIED**; and

3. Defendant's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 23), be **DENIED**.


Dated: December 14, 2012

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge


Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 21, 2012,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **seven days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.