# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DEMETRIUS DEMARCO SPENCER,

    Defendant.

**ORDER**
Criminal No. 12-280 (MJD/JJK)

Richard A. Newberry, Jr., Esq., Assistant United States Attorney, Counsel for Plaintiff.

Douglas Olson, Esq., Assistant Federal Defender, Counsel for Defendant.

## I. INTRODUCTION

This matter is before the Court on Defendant Demetrius Demarco Spencer's Motion for a New Trial and for a Judgment of Acquittal. [Doc. No. 77]

## II. BACKGROUND

In the early morning hours of August 23, 2012, Minneapolis Police Department dispatch requested that officers respond to a report of a fight in a parking lot near the intersection of First Avenue North and North First Street in downtown Minneapolis. (Trial Tr. vol. 2, 137-38, July 15, 2013.) Officer Joshua

1

Stewart and his partner responded to the call. (Id.) When Officer Stewart arrived at the parking lot, he observed Defendant standing next to a car with the driver's side open. (Id. at 138.) Officer Stewart then observed Defendant reach into his pants and pull out an "L-shaped" bundle in a white sock and then bend down in the direction of the driver's side seat. (Id. at 138-39.) Officer Stewart believed that the sock contained a firearm. (Id. at 139.) He approached Defendant, detained him and retrieved the L-shaped bundle from under the seat. (Id. at 149.) Officer Stewart discovered that the sock contained a firearm and he placed Defendant under arrest. (Id. at 140.) On November 14, 2012, a federal grand jury returned an indictment against the Defendant charging him with felon in possession of a firearm in violation of 18 U.S.C. § 922(g). [Docket No. 1]

Defendant subsequently filed a motion to suppress evidence obtained as a result of the search and seizure, including the firearm. [Docket No. 21] Magistrate Judge Jeffrey J. Keyes presided over the motions hearing on December 12, 2012. Assistant United States Attorney Newberry was unable to appear at the hearing due to another trial and substitute counsel appeared on his behalf. [Docket No. 94 at 2] The Defendant testified at the hearing in order to establish standing to file a motion to suppress. [Docket No. 33] The Government

called Sergeant John Biederman, the case agent, to testify regarding the search and seizure of the firearm. [Id.] Defendant objected to Sergeant Biederman's testimony as hearsay because Sergeant Biederman was not present during the search and seizure of the firearm and arrest of Defendant. [Id.] The Defendant's objection was overruled and Sergeant Beiderman was permitted to testify. [Id.] Based on the motions, the testimony at the hearing and the arguments of counsel, Magistrate Judge Keyes recommended, <u>inter alia</u>, that the motion to suppress be denied. [Id.] This Court adopted the Report and Recommendation on January 7, 2013. [Docket No. 46]

On January 16, 2013, a jury found Defendant guilty of felon in possession of a firearm as charged in Count 1 of the indictment. [Docket No. 72] Defendant now moves the Court to order a new trial pursuant to Federal Rules of Criminal Procedure 33(a) and also moves the Court to enter judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). [Docket No. 77]

### III. DISCUSSION

#### A. Motion for a New Trial

##### 1. Standard

Under Rule 33 of the Federal Rules of Criminal Procedure, the Court may vacate any judgment and grant a new trial if the interest of justice so requires. The decision of whether to grant a new trial is within the broad discretion of the Court. United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004). "The court should balance the alleged errors against the record as a whole and evaluate the fairness of the trial to determine whether a new trial is appropriate." United States v. Eagle, 137 F.3d 1011, 1014 (8th Cir. 1998) (citation omitted). "Unless the court determines that a miscarriage of justice will otherwise occur, the jury's verdict must be allowed to stand." United States v. Garcia, 569 F.3d 885, 889 (8th Cir. 2009). The Court's authority to grant a new trial should be exercised "sparingly and with caution." Id.

### 2. Discovery

Defendant asserts that the Government violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963) to timely disclose exculpatory evidence when it: (1) failed to disclose exculpatory evidence concerning Officer Stewart's false police report and his anticipated trial testimony; and (2) failed to disclose, in advance of trial, that the Minneapolis Police Department mishandled the sock thereby rendering it unsuitable for DNA testing. Defendant maintains that these

Brady violations are grounds for the Court to order a new trial in the interest of justice.

"To establish a Brady violation, a defendant is required to show that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material." United States v. Keltner, 147 F.3d 662, 673 (8th Cir. 1998). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Ladoucer, 573 F.3d 628, 636 (8th Cir. 2009). "Brady does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial." United States v. Jeanpierre, 636 F.3d 416, 422 (8th Cir. 2011) (quoting United States v. Almendares, 397 F.3d 653, 664 (8th Cir. 2005)).

With respect to Officer Stewart's police report and his anticipated trial testimony, Defendant argues that the Government failed to disclose to him that Officer Stewart's police report was not accurate and that Officer Stewart was prepared to testify at trial that his report was not accurate. Officer Stewart's police report stated that "I saw A1 [Defendant] put the white L shaped sock under the front driver's side seat of [the car]." [Docket No. 98-1 at 8] At trial,

5

however, Officer Stewart acknowledged that he in fact did not see Defendant put the white L-shaped sock under the driver's seat of the car, as he described in his report, and acknowledged that his report was inaccurate. (Trial Tr. vol. 2, 155-57, Jan. 15, 2013.) Officer Stewart testified that he reviewed a videotape of the arrest scene produced by the Defendant on the Friday before trial started. (Id. at 164.) The Defendant maintains that this videotape establishes that Officer Stewart could not have seen the Defendant put a L-shaped sock under the driver's seat of the car. [Docket No. 80 at 3] The Defendant speculates that after watching the videotape on the Friday before trial, Officer Stewart informed the Government about the inaccuracy of his report. The Defendant then argues that the Government failed to disclose this inaccuracy and the fact that Officer Stewart planned to testify inconsistently with his report to the Defendant. Instead, the Defendant argues, he learned of the inaccuracy at trial during his cross examination of Officer Stewart.

With respect to the Minneapolis Police Department's mishandling of the sock, Defendant argues that the Government failed to disclose that the only reason the sock was not sent in for DNA testing was that it was mishandled by the arresting officers and was rendered unfit for DNA testing. Defendant argues

6

that the Police Department failed to create a report about the mishandling of the sock and there was no disclosure, in any form, to the defense.  Defendant argues that he was left to discover these facts during the cross examination of case agent Sergeant Biederman.  (Trial Tr. vol. 2, 191-94, Jan. 15, 2013.)

Defendant argues that the suppression of this evidence constitutes a <u>Brady</u> violation because the evidence was materially favorable to the defense.  He asserts that because he discovered this evidence during cross examination, as compared to a disclosure from the Government in advance of trial, he was prevented from incorporating it into his defense.  Defendant maintains that the Government's failure to disclose thwarted the effectiveness of his cross examinations of Stewart and Biederman and undermined his overall trial strategy.  Defendant further argues that the Government's failure to disclose this information substantially prejudiced the defense and gave the Government a material advantage.  Defendant reasons that if he had known about the inaccurate police report, he would not have disclosed the videotape or made a re-enactment of the scene to establish that Stewart's view of the Defendant was obstructed.  Defendant further argues that the failure to disclose evidence had a collateral impact on Defendant's decision not to testify at trial.  Defendant admits

that he decided not testify based on the Court's ruling concerning the impeachment evidence that could be used if he were to testify, yet states that he "probably would have testified had he known that Officer Stewart was going to support his testimony." [Docket No. 80 at 14] Defendant argues that he did not put an L-shaped sock under the car seat and reasons that Officer Stewart's trial testimony is consistent with what Defendant maintains occurred before he was arrested. [Id.]

The Court finds that Government's failure to disclose the inaccuracy in Stewart's police report and his corresponding anticipated trial testimony does not constitute a <u>Brady</u> violation. The Defendant's arguments are based on pure speculation and there is no evidence before the Court to support the allegations. Although the Government acknowledges that the prosecutor showed the videotape to Officer Stewart, it maintains that during trial preparation, Officer Stewart "never, ever, not even once" said that his police report was inaccurate. [Docket No. 94 at 8] The Defendant does not provide the Court with any evidence to rebut this statement and to support its speculation. As such, there is no evidence before the Court that the Government suppressed evidence that was favorable to the Defendant. Further, the Defendant had a meaningful

8

opportunity to cross examine Stewart about his police report and its inaccuracies and the events leading up to the Defendant's arrest.

The Court also finds that the alleged mishandling of the sock does not constitute a <u>Brady</u> violation or warrant a new trial. "[A]n investigating officer's failure to preserve evidence potentially useful to the accused or their failure to disclose such evidence does not constitute a <u>Brady</u> violation in the absence of bad faith." <u>White v. McKinley</u>, 519 F.3d 806, 813-14 (8th Cir. 2008). The evidence at trial showed that Stewart recovered the firearm from the car amidst a crowd of people and Stewart testified that he did not take photographs of the items found out of concern for the public's and the officers' safety. (Trial Tr. vol. 2, 170, Jan. 15, 2013.) The evidence also established that Stewart was wearing his duty gloves when he recovered the L-shaped sock containing the firearm and therefore the firearm was sent for DNA testing and the sock was not sent for DNA testing. (<u>Id.</u> at 168, 192-94.) The Court finds that no <u>Brady</u> violation occurred as the sock, gun, and the DNA results were disclosed to the Defendant and placed in evidence at trial. The Court further finds that there was no prejudice to the Defendant because he had the opportunity to cross examine both Officer Stewart and Sergeant Biederman regarding this issue and because the

9

Defendant presented to the jury the fact that his DNA was not on the firearm, the fact that the sock was never tested for DNA, and the fact that it was not tested for DNA due to the way it was handled. (Trial Tr., vol. 2, 191-93, 224-25, Jan. 15, 2013.) Therefore, a new trial is not warranted on these grounds.

### 3. Prosecutorial Misconduct

Defendant asserts that the Government engaged in prosecutorial misconduct during its closing arguments. Defendant argues that the Prosecutor's closing argument contained facts that were not in evidence when he characterized Officer Stewart's testimony regarding his observations of the Defendant. Defendant further argues that the Prosecutor claimed that the videotape showed certain of the Defendant's movements, but that there is no such evidence on the videotape. Finally, Defendant argues that the Prosecutor vouched for Officer Stewart's false police report and improperly cited the circumstantial evidence rule. Defendant maintains that these statements constitute prosecutorial misconduct and are grounds for the Court to order a new trial in the interest of justice.

"A prosecutor's improper comments during closing argument can require reversal of a conviction if they 'prejudiced the defendant's rights in obtaining a

fair trial.'" United States v. Darden, 688 F.3d 382, 388 (8th Cir. 2012). "If the remarks were improper, we examine the cumulative effect of the misconduct, the strength of the properly admitted evidence, and any curative actions taken by the district court." United States v. Montgomery, 635 F.3d 1074, 1096-97 (8th Cir. 2011). "Unless the court determines that a miscarriage of justice will otherwise occur, the jury's verdict must be allowed to stand." United States v. Garcia, 569 F.3d 885, 889 (8th Cir. 2009).

The Court finds that the Prosecutor's comments during closing argument do not require reversal of the Defendant's conviction. It is permissible for closing arguments to be argumentative and assert conclusions. United States v. McGhee, 532 F.3d 733, 741 (8th Cir. 2008). Moreover, the strength of the evidence presented to the jury indicates that the result would not have been different had the Prosecutor not made the comments. United States v. Barrera, 628 F.3d 1004, 1008 (8th Cir. 2011) (citation omitted) ("If the evidence of guilt is overwhelming, an improper argument is less likely to affect the jury verdict."). The jury heard Officer Stewart's testimony for themselves, the videotape was played multiple times during trial, and the videotape was included in the evidence that went back to the jury room for deliberations. Therefore, the jury could reach its own

conclusion as to the properly admitted evidence. Further, the Court's initial instructions to the jury included an instruction that questions, remarks, or arguments of the lawyers are not evidence in this case. Likewise, the Court's final instructions to the jury, which were given orally and in writing, included the following:

> Certain things are not evidence. I shall list those things again for you now:
> 1. Statements, arguments, questions and comments by lawyers representing the parties in the case are not evidence.

[Docket No. 69 at 3] Therefore, the Court concludes that the Prosecutor's comments during closing argument did not prejudice the Defendant's rights in obtaining a fair trial.

### 4. Suppression Hearing

Defendant also asserts that a new trial is warranted because the Government was permitted to use hearsay testimony at the suppression hearing. Defendant reasons that he was substantially prejudiced when the Government was permitted, over the Defendant's objection, to present Officer Stewart's testimony concerning his seizure of the firearm and the subsequent arrest of the Defendant through the hearsay testimony of Sergeant Biederman, who was not

present during the arrest and seizure and testified on the basis of his review of Officer Stewart's reports.

Although the Government's practice at the suppression hearing is not the preferred method for suppression hearings, the Court finds that the conduct at the suppression hearing does not warrant a new trial to avoid a miscarriage of justice. A court may rely on hearsay evidence at a suppression hearing, even though that evidence would not be admissible at trial. See United States v. Thompson, 533 F.3d 964, 969 (8th Cir. 2008) ("[T]he right of confrontation does not apply to the same extent at pretrial suppression hearings as it does at trial."); United States v. Boyce, 797 F.2d 691, 693 (8th Cir. 1986) (discussing the propriety of relying on otherwise reliable hearsay evidence at a suppression hearing because the right of confrontation does not apply precisely as it does at trial); United States v. Smith, No. 12-CR-183 (SRN/AJB), 2012 WL 5497862, at *2 (D. Minn. Nov. 13, 2012) ("[P]resuming that the appropriate witness(es) will testify and be subject to cross-examination at trial with respect to relevant matters, there is no violation of the defendant's right to confront the witness who was absent from the suppression hearing.").

Here, the Court concluded that "Sergeant Biederman's testimony did not cause this Court serious concern about the truthfulness of the statements he attributed to the arresting officer, and it was proper to rely upon his sworn testimony for purposes of the suppression hearing." [Docket No. 33 at 2 n. 1] At trial, the arresting officers testified and the Defendant had an opportunity to cross examine the officers concerning the circumstances of the seizure of the firearm and the subsequent arrest of the Defendant. Therefore, the Court concludes that the conduct at the suppression hearing does not warrant a new trial.

### 5. Ineffective Assistance of Counsel

Defendant also asserts that a new trial is warranted due to ineffective assistance of counsel. Defendant argues that defense counsel should not have disclosed the parking lot videotape to the prosecution in advance of the trial until Officer Stewart testified under oath consistently with his police report. Defendant reasons that pretrial disclosure of the videotape ruined the limited opportunity that the Defendant had to impeach Officer Stewart. Defendant presumes that if he had not disclosed the videotape in advance of trial, then Officer Stewart would have testified consistently with his report because he

14

would not have viewed the videotape. Defendant argues that counsel should have been better equipped to impeach Officer Stewart and maintains that counsel's cross examination of Officer Stewart was ineffective.

In order to gain relief for ineffective assistance of counsel, Defendant must establish both that his counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). The burden is on Defendant to establish a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005) (quoting Strickland, 466 U.S. at 687). The Court "need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice." Apfel, 97 F.3d at 1076.

Counsel's performance is deficient if it falls outside of the "wide range of reasonable professional assistance," although there is a strong presumption that

counsel's conduct falls within this broad spectrum. Strickland, 466 U.S. at 689. "Counsel's performance is deficient when it is less competent than the assistance that should be provided by a reasonable attorney under the same circumstances." Chambers v. Armontrout, 907 F.2d 825, 828 (8th Cir. 1990) (citing Strickland, 466 U.S. at 687).

The Court concludes that Defendant's allegations of ineffective assistance of counsel are insufficient to warrant a grant of a new trial. In light of the evidence against Defendant in the underlying record, the Defendant cannot establish a reasonable probability that, but for counsel's actions, the outcome would have been different. Moreover, Defendant fails to show by a reasonable probability how he was prejudiced by counsel's discovery, cross examination and trial strategies. See United States v. Orr, 636 F.3d 944, 952 (8th Cir. 2011) cert. denied, 132 S. Ct. 758 (2011) ("[W]e generally entrust . . . matters of trial strategy [] to the professional discretion of counsel."). Defendant's arguments as to what may have happened had he not produced the videotape in advance of trial and the impact that decision had on the quality of the cross examination are purely speculative. Additionally, Federal Rule of Criminal Procedure 16 requires reciprocal disclosure of discovery materials. This rule applies to the Defendant

as he previously filed several motions seeking orders requiring the Government to produce various discovery materials. [Docket Nos. 9, 11, 13, 22, 23] Therefore, Rule 16(b)(1) created an affirmative obligation for the Defendant to produce discovery materials in his possession, custody, or control that he intends to use in his case-in-chief at trial. Fed. R. Civ. P. 16(b)(1)(A). In sum, Defendant cannot show the prejudice required to succeed on his ineffective assistance of counsel claim. Therefore, a new trial is not warranted on this ground.

### B. Motion for Judgment of Acquittal

When deciding a motion for acquittal, the Court views the evidence and all reasonable inferences from it in the light most favorable to the verdict. United States v. Hood, 51 F.3d 128, 129 (8th Cir. 1995). If there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt, that verdict must be upheld. Id.

Defendant's motion asserts that the Court should enter judgment of acquittal because the evidence was insufficient to prove the crime beyond a reasonable doubt. Defendant does not provide any further argument or analysis of this motion in his memorandum of law in support of the motion or in his reply brief.

17

The Court concludes that there is sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, that the Defendant was guilty of possession of a firearm by a convicted felon. The Defendant's motion for judgment of acquittal is denied.

Accordingly, based upon the files and records herein, **IT IS HEREBY ORDERED** that Defendant's Motion for a New Trial and Motion for a Judgment of Acquittal [Doc. No. 77] is **DENIED**.

Date: August 26, 2013        s/ Michael J. Davis

                                          Michael J. Davis
                                          Chief Judge
                                          United States District Court